## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 98 C 1116 | DATE | 6/12/2001 |
| CASE TITLE | William Sikora vs. AFD Industries, Inc. et al. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The motions to bar his testimony are granted. Status hearing set for June 21, 2001 at 9:45am.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | JUN 13 2001 |
| | Notified counsel by telephone. | date docketed |
| ✓ | Docketing to mail notices. | |
| | Mail A 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | |
| WAH | courtroom deputy's initials | ED-7 FILED FOR DOCKETING 01 JUN 12 PM 2:56 |
| | Date/time received in central Clerk's Office | mailing deputy initials |

Document Number: 74

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM SIKORA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 98 c 1116 |
| | ) | |
| AFD INDUSTRIES, INC. and VERTO STAALKABEL B.V., INC., d/b/a UNITED ROPES, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| VERTO STAALKABEL B.V., | ) | |
| | ) | |
| Cross-claimant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| AFD INDUSTRIES, INC., | ) | |
| | ) | |
| Cross-defendant. | ) | |
| | ) | |
| VERTO STAALKABEL, B.V., | ) | |
| | ) | |
| Third party plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MONTGOMERY KONE, INC., f/k/a MONTGOMERY ELEVATOR CO., | ) | |
| | ) | |
| Third party defendant. | ) | |

DOCKETED
JUN 1 3 2001

## MEMORANDUM OPINION AND ORDER

Plaintiff was allegedly working as an assistant elevator repairman for Montgomery Elevator Company (Montgomery) on April 30, 1993. While he was scraping the outer surface

of the cables of an elevator located in a hotel, his right arm and a portion of his left hand became trapped between an elevator cable and a sheave, causing their amputation. The cable incorporated in the elevator had been manufactured by Verto Staalkabel B.V. (Verto) and distributed by AFD Industries, Inc. (AFD). Plaintiff contends that the elevator cables were defective, thereby causing a dangerous condition that caused his injuries. In support of that contention he submitted the report of Ralph L. Barnett as his expert. Barnett was ultimately deposed, and both Verto and AFD have moved to bar his testimony, arguing that his report (actually, two reports) and his testimony do not comply with the requirements of <u>Daubert v. Merrill Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993), now incorporated in Rule 702 of the Federal Rules of Evidence.

There appears to be little dispute about the basic relevant facts. The elevators at the hotel operate on a system of sheaves and cables. The cables are comprised of numerous strands of metal wires which are wrapped around a natural fiber core. During manufacture a factory lubricant is applied to the fiber core and to the outside of the cables. Elevator cables require additional lubrication throughout their useful life. The elevators here were installed in February 1992, and, prior to the hotel's opening in March 1993, a black tarry substance (which the parties refer to as "gunk") began to appear on the cables and to be thrown off the cables. Montgomery employees lubricated the cables with one field lubricant, Nylube, and, after consultation with AFD and Verto, then with another. The gunk persisted, however, and Montgomery asked that the cables be replaced. AFD and Verto refused. Plaintiff was attempting to remove gunk when he was injured. The cables were replaced in October 1993, and the problem did not recur.

Barnett's opinion is an exercise in deductive logic:

1. the cable lubricant applied at the factory was incompatible with the field lubricants used by Montgomery;

2. lubricant incompatibility causes the creation of gunk, which will be thrown off the cables during operation;

3. gunk can be created by other causes;

4. one cause is over-lubrication, but the evidence discloses that the cables were not over-lubricated;

5. another cause is operation in a cool environment, but the evidence discloses that the cables operated in a warm environment;

6. a third cause is air-borne contaminants, such as dust, lint and construction-related gypsum dust or metal fines from sheaves and cables, resulting from the elevator's operation, but that gunk will not be thrown off the cables;

7. therefore the gunk must have been created by lubricant incompatibility;

8. gunk, when thrown off cables, creates an unreasonably dangerous condition;

9. gunk created by lubricant incompatibility cannot be cleaned off cables; the cables must be replaced;

10. the problems of lubricant incompatibility were well known in the industry;

11. defendants failed to warn, either at the time of sale or later inspection, of the problems arising from lubricant incompatibility.

Defendants attack the reliability of Barnett's opinion on a variety of grounds, but we focus on but one, slightly expanded. Barnett is a respected mechanical engineer who

apparently often opines and testifies as an expert. He has had, however, virtually no experience in the elevator industry and had no prior experience with gunk forming on elevator cables or being thrown off. His hypothesis (and he concedes that his conclusions are largely a result of deductive logic) was formulated after he was engaged to be an expert for plaintiff and as a result of this litigation.

It is not surprising that Barnett was unfamiliar with gunk formation – it does not often occur and the technical literature is sparse indeed – and reliance upon deductive logic and the elimination of alternatives is not necessarily improper. *See* Bammerlin v. Navistar International Transportation Corp., 30 F.3d 898, 902 (7th Cir. 1994). But here the expert conclusions rest upon tenuous premises. The technical literature does suggest that solvents (customarily used for cleaning) are incompatible with core lubrication because they tend to cause the core lubrication to bleed out, thus causing inadequate lubrication. It does not lend much support to the notion that incompatible lubricants lead to the creation of gunk, much less to gunk that is thrown off. Barnett cannot say, indeed, with any degree of certainty, that Nylube was incompatible with the core lubricant. He never saw or tested the gunk thrown off and he has not analyzed Nylube. Rather, he concludes that the field lubricant, whatever it was, must have been incompatible because the gunk that was formed was thrown off. For this conclusion he relies upon the principal that substances with lesser viscosity (thinner) are less apt to adhere and are more apt to be thrown off than substances of greater viscosity resulting from the accumulation of particulate matter.

That may well be a rational hypothesis, but Barnett did not engage in any testing to determine its validity, although he conceded that testing was feasible. It has not been

subjected to peer review and publication. He is the only person to so conclude. It is contrary to the hypothesis of those with considerable practical experience in the field. That hypothesis (and McAlaine conceded it was no more than that), based upon gunk thrown off at two other locations, was that particulate matter, whether metal fines or other contaminants, built up on oxidizing lubricants, eventually became sufficiently thick and inflexible so as to be thrown off during the high speed operation of high-rise elevators. In both instances the thrown-off gunk was analyzed. In one, the gunk consisted of 80.4 per cent suspended solids and in the other about 30 per cent, but in both particulate matter was present in a substantial amount. The literature also indicates that free-floating particulate matter and metal fines will adhere to the sticky surface lubricant on elevator cables. Barnett may well be a supremely qualified mechanical engineer, but we cannot conclude that his analysis in this case is reliable. *See* Bourelle v. Crown Equipment Corp., 220 F.3d 532, 537 fn. 11 (7th Cir. 2000). The motions to bar his testimony are granted.

JAMES B. MORAN
Senior Judge, U. S. District Court

June 12, 2001.