Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 1116 | **DATE** | 9/17/2002 |
| **CASE TITLE** | William Sikora vs. AFD Industries, Inc. et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order. Defendants' motions to bar expert testimony are denied. Status hearing set for October 1, 2002 at 9:15am.

(11) ■  [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | SEP 18 2002 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| WAH | courtroom deputy's initials | 02 SEP 17 PM 3:53 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM SIKORA, | ) | |
| Plaintiff, | ) | |
| vs. | ) | No. 98 C 1116 |
| AFD INDUSTRIES, INC. and VERTO STAALKABEL BV, INC., d/b/a UNITED ROPES, | ) | |
| Defendants. | ) | |
| VERTO STAALKABEL B.V., | ) | |
| Cross-Claimant, | ) | |
| vs. | ) | |
| AFD INDUSTRIES, INC., | ) | |
| Cross-Defendant. | ) | |
| VERTO STAALKABEL B.V. | ) | |
| Third Party Plaintiff, | ) | |
| vs. | ) | |
| MONTGOMERY KONE, INC., f/k/a MONTGOMERY ELEVATOR CO., | ) | |
| Third Party Defendant. | ) | |

DOCKETED
SEP 1 8 2002

## MEMORANDUM OPINION AND ORDER

Plaintiff brought this product liability action against a manufacturer and a distributor of elevator cables, and defendants now move to bar testimony of plaintiff's proposed expert,



Richard Bertz. For the following reasons, defendants motions are denied.

## BACKGROUND

Plaintiff was allegedly working as an elevator mechanic's helper for Montgomery Elevator Company (Montgomery) on April 30, 1993. He was scraping the outer surfaces of elevator cables in a Chicago hotel when his right arm and a portion of his left hand became trapped between a cable and a sheave, causing their amputation. The cables, manufactured by Verto Staalkabel B.V. (Verto) and distributed by AFD Industries, Inc. (AFD), are comprised of numerous strands of metal wires that are wrapped around a natural fiber core. During manufacture, a factory lubricant is applied to the fiber core and to the outside of the cables. The cables then require additional lubrication throughout their useful life.

The elevators here were installed in February 1992, and prior to the hotel's opening in March 1993, a black tarry substance (referred to as "gunk" by the parties) began to appear on and be thrown off the cables. Montgomery employees lubricated the cables with one field lubricant, Nylube, and after consultation with AFD and Verto, with another. The gunk persisted, however, and Montgomery asked that the cables be replaced. AFD and Verto refused to replace all the cables, instead offering to remove the cables from one of the elevators, elevator P6, for examination. No agreement was reached. Plaintiff was attempting to remove the gunk from the cables in elevator P6 when he was injured. All of the cables were then replaced in October 1993, and the problem did not recur.

Plaintiff's proposed expert Richard Bertz has 31 years of elevator industry field experience, including as a mechanic, estimator, project engineer, sales manager, and consultant. He has worked with various elevator code enforcement agencies and has published

several articles on elevator technology. In preparing his report, Bertz examined photographs of the cables and read testimony from people who had examined and worked with the cables. He compared these observations against his own knowledge, as well as with elevator industry literature.

Bertz asserts that there was excessive wear early in the life of the cables, shown by their loss of diameter. He also finds that two processes had taken place simultaneously: rouging and the buildup of a wet tarry substance. Rouging occurs when the fiber core of a cable dries, particles of steel slough off, and a fine red dust is cast from the cable. He theorizes that the gunk buildup was more likely than not created by excessive depletion of factory applied lubricant.

According to Bertz, the fact that the cables were so dry as to cause rouging and at the same time able to throw off a wet lubricant could only mean that the cables were manufactured defectively. He knows of no error in the field that would cause this simultaneous condition. He proposes that more likely than not there was either incompatibility between the core fiber and core lubricant or improper factory control of lubrication.

Bertz's findings lead him to four main conclusions: (1) that the elevator ropes were in a worn condition when they were inspected two weeks before plaintiff's injuries; (2) that defendants were negligent in recommending and applying a specific field lubrication to the cables at the inspection; (3) that the simultaneous rouging and gunk throw-off were caused by a manufacturing defect; and (4) that a manufacturing defect and/or defendants' negligence were the proximate cause of plaintiff's injuries.

## DISCUSSION

Defendants challenge portions of Betz's report and subsequent deposition testimony for failing to comply with the requirements of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and Federal Rule of Evidence 702. Under Rule 702, our task is to screen out unreliable and irrelevant testimony. Walker v. Soo Line R.R. Co., 208 F.3d 581, 590 (7th Cir. 2000); Kuhmo Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 148 (1999). In determining reliability, we ask if the expert is qualified in the relevant field and examine the methodology used to reach conclusions. Kuhmo, 526 U.S. at 153.

A person can be qualified in a field through knowledge, skill, experience, training, or education. F.R.E. 702. Defendants do not dispute Bertz's experience in elevator maintenance and do not challenge his qualification to opine about the alleged worn condition of the cables in April 1993. They do, however, challenge his qualifications to opine about the causes of the gunk formation and about whether the cables were defectively manufactured.

The gunk formation at issue does not often occur, and there is limited literature about that. Here we have someone who has been working in the elevator industry for over 30 years, with extensive experience in maintenance, who has never come across it. He has, however, come across a wide variety of cable problems in the field, including materials that developed on cables after manufacture. While Bertz may not have been familiar with this particular type of gunk, his extensive background in elevator operation, maintenance and safety qualifies him to speak on what are and are not its probable causes.

Defendants also point out that Bertz's background does not include any experience in cable design or manufacture. It is illogical, they argue, for someone to state with any certainty

that a product was manufactured defectively if he does not have any experience or prior education in the manufacturing or design process. But Bertz reaches his conclusion from a different angle. His experience in the maintenance field guides his conclusion that the alleged condition of the cables did not arise from an error in the field, which in turn leads to his conclusion that the error must have occurred in manufacture. Since elimination of alternatives is a proper method of examination, Bammerlin v. Navistar International Transportation Corp., 30 F.3d 898, 902 (7th Cir. 1994), his experience in the field, which covers alternatives, qualifies him to provide this opinion.

We next turn to the issue of whether the methodology Bertz uses to reach his conclusions is reliable. Bertz's opinion was formed by comparing the evidence before him against the knowledge he has gathered working in the elevator industry. While observation without laboratory testing may not satisfy the reliability requirements for scientific testimony, Chapman v. Maytag, 297 F.3d 682, 688 (7th Cir. 2002), more flexibility is required when determining the reliability of experience-based methodology. Kuhmo, 526 U.S. at 150-152. It is sufficient for an expert whose qualifications are based on specialized knowledge to weigh the information before him against "general truths derived from specialized experience.'" Hand, Learned, Historical and Practical Considerations Regarding Expert Testimony, 15 Harv. L.Rev. 40, 54 (1901) *as quoted in* Kuhmo, 526 U.S. at 148-149. Such is the case here.

An opinion must also be based on sufficient facts and data to be reliable. Daubert, 509 U.S. at 597-98. Here, Bertz was limited in the physical materials he could examine since, according to plaintiff, the cables and gunk have not been properly preserved for examination. Bertz relies instead on photographs and witness descriptions of the materials. Defendants

challenge the photos and descriptions, noting that the descriptions in the testimony are contradictory. These challenges go to the soundness of the facts underlying Bertz's opinion, an argument more properly made to the trier of fact. Smith v. Ford Motor Co., 215 F.3d 713, 719 (7th Cir. 2000).

Not only must an expert's opinions be reliable, they must also be relevant. Kuhmo, 526 U.S. at 148. Our role in determining relevancy under Rule 702 is limited to determining whether the testimony is pertinent to an issue in the case. Smith v. Ford Motor Co., 215 F.3d 713, 718 (7th Cir. 2000).

Bertz finds that defendants were negligent when, two weeks prior to plaintiff's injuries, they recommended applying a specific field lubricant to the hotel elevator cables and did not recommend removing and replacing all the cables. Defendants assert that these opinions do not assist the trier of fact because they do not fit the facts of this case. Defendants point out that they did offer to remove the cables from elevator P6 and that there is no evidence in the record that the lubricant was applied to that elevator. Since plaintiff was working on elevator P6 when he was injured, they argue that it is irrelevant what alleged recommendations were followed regarding the cables as a whole.

The correspondence between AFD, Verto, and Montgomery shows disagreement as to how to address the problem of the gunk buildup on the cables. Allegedly, defendants rejected a demand to remove and replace all the elevator cables and instead recommended removing the cables in elevator P6 for testing and lubricating the cables in the remaining elevators. Bertz finds that defendants' solution did not properly address the problem with which they were presented. As a result of their failure to follow the proper course of action, he argues,

all of the cables were still causing problems that required maintenance. There is sufficient evidence in the record to support this conclusion.

Bertz's final opinion, that defendants' alleged negligence and the alleged manufacturing defect were proximate causes of plaintiff's injury, is also challenged on relevancy grounds. Defendants argue that a jury is capable of following the simple line of reasoning necessary to link the alleged wrongdoings to the event that caused plaintiff's injuries, making Bertz's opinion superfluous. Proximate cause is clearly a pertinent issue in this case since it is an element of both of plaintiff's claims. Will Bertz's expert opinion regarding proximate cause be helpful to the jury? Most likely it will and, accordingly, it is relevant.

## CONCLUSION

For the above reasons, defendants' motions to bar expert testimony are denied.

*JAMES B. MORAN*
JAMES B. MORAN
Senior Judge, U. S. District Court

Sept. 17, 2002.