# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 1116 | **DATE** | 4/16/2004 |
| **CASE TITLE** | WILLIAM SIKORA vs. AFD INDUSTRIES, INC., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

> MEMORANDUM OPINION AND ORDER

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter Memorandum Opinion And Order. Verto's motions 3 and 4 for summary judgment, and AFD's motion to join those motions are granted. Verto's remaining motions, AFD's motion for summary judgment, Sikora's motion to strike, and the remaining motions to join are denied. Status hearing is set for April 20, 2004 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| LG | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

APR 19 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WILLIAM SIKORA,                          )
                                         )
            Plaintiff,                   )
                                         )
      vs.                                )    No. 98 C 1116
                                         )
AFD INDUSTRIES, INC. and VERTO           )
STAALKABEL BV, INC., d/b/a               )
UNITED ROPES,                            )
                                         )
            Defendants.                  )

DOCKETED

APR 19 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff William Sikora brought this action against defendants arising from injuries he received while cleaning elevator ropes. Defendants filed a series of summary judgment motions and two motions *in limine.* Plaintiff filed a motion to strike certain portions of defendants' expert report. For the following reasons, defendants' summary judgment motions 3 and 4 are granted and the remaining motions are denied.

## BACKGROUND

William Sikora was employed by Montgomery Elevator Company (Montgomery) as an assistant elevator repairmen. In late 1991, Montgomery installed the elevator system in the new Sheraton Hotel & Towers in Chicago, Illinois, using wire cables that were manufactured by defendant Verto Staalkabel B.V. (Verto) and distributed by AFD Industries, Inc. (AFD). On March 1, 1992, the hotel opened for business and public use of the elevators began.

Shortly thereafter, a black tar-like substance (commonly referred to as "gunk") began accumulating on the elevator ropes. While gunk is not unusual, the substance on the ropes in

the Sheraton had a different consistency, texture and volume than that usually encountered by Montgomery personnel. It is also apparently unusual for gunk to appear so quickly after installation. While there is substantial disagreement as to the usefulness of different cleaning methods, plaintiff claims that the character of gunk on the Sheraton ropes required Montgomery employees to clean the sheaves as well as the ropes. Additionally, he alleges that the only way to do so adequately was to hold a putty knife against the sheave grooves while the system was moving.

On April 15, 1993, employees of AFD and Verto inspected the elevators and noticed that the diameter of the ropes had decreased by 4 to 5 per cent. Plaintiff claims that defendants should have realized at that time that an extraordinary cleaning method was necessary to address the problem. Employees of Montgomery recommended that the ropes be removed and replaced because they were defective, but defendants declined to do so and Montgomery employees continued to clean the ropes.

On April 30, 1993, plaintiff was using a putty knife to remove gunk from the sheave when his hand got caught in the ropes. When he was unable to remove his hand from the ropes, his right hand and arm were amputated and his left hand was seriously damaged.

## DISCUSSION

### Summary Judgment Motions

The court's function in ruling on a motion for summary judgment is merely to determine if there is a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Only if the evidence on file shows that no such issue exists, and that the moving party is entitled to judgment as a matter of law, will the court grant the motion.

Celotex Corp. v Catrett, 477 U.S. 317, 322-23 (1986); Bennett v. Roberts, 295 F.3d 687, 694 (7th Cir. 2002).

Plaintiff's complaint consists of four counts. In count I, he alleges strict liability against Verto as the manufacturer of the ropes. In count II, he claims that defendants' employees negligently performed the April 14, 1993, inspection. Counts III and IV contain allegations of breach of implied warranty for an ordinary purpose, and breach of implied warranty for a particular purpose.

Verto's Summary Judgment Motion No. 1

Defendant Verto first argues that it did not owe a duty to the plaintiff because he was injured while trying to repair the very condition that he was hired to repair. Verto cites to Shanks v. Insurance Co. of North America, 211 So. 2d 729 (La. Ct. App. 2nd Cir. 1968) for the proposition that, particularly where the product manufactured by the defendant was the component of a larger system, a manufacturer owes no duty in this situation.

In Illinois, the general rule is that a manufacturer of a product owes a duty in strict liability to any reasonably foreseeable plaintiff. Court v. Grzelinski, 379 N.E.2d 281, 283 (Ill. 1978). This may include parties who are outside the purchasing line of the product, such as a repairman. Id; see also Skarski v. Ace-Chicago Great Dane Corp., 485 N.E.2d 1312, 1317 (Ill. App. 1st Dist. 1985). A majority of out-of-state authorities, including many of the cases relied upon by defendant, agree with this general rule. See, e.g., Bich v. General Elec. Co., 614 P.2d 1323, 1326 (Wash. Ct. App. 3rd Div. 1980).

In Shanks, a mechanic employed by an automobile dealership was attempting to repair a defective transmission in a truck in order to prepare the vehicle for delivery to its purchaser.

211 So. 2d at 730.  While doing so, the defect in the transmission caused the truck to move, injuring the mechanic.  *Id.*  In affirming the dismissal of the plaintiff's complaint, the court held that the defendant owed no duty to the plaintiff because the defect should have been obvious to a person in the plaintiff's position.  *Id.* at 731.

Defendant argues that we should follow <u>Shanks</u> in finding an exception to the general rule because the ropes, even if defective, were merely a component of the elevator system and plaintiff was specifically called upon to repair a defect in the ropes.  <u>Shanks</u>, however, is easily distinguishable from the present case.  First, while plaintiff was hired to clean the ropes in question, he was not actually injured by the specific *defect* that he was trying to correct.  In fact, as is the subject of defendants third, fourth, fifth and sixth summary judgment motions, plaintiff does not point to a specific defect in the product.  While it is possible that the injuries were caused by the excessive gunk on the ropes, this was a *result* of the alleged defect rather than the defect itself.  Also, unlike in <u>Shanks</u>, the ropes here had already entered the stream of commerce.  By manufacturing and selling the ropes, Verto impliedly assured subsequent users and repairmen that the ropes were sound.  By doing so, it assumed a duty to the plaintiff.

<u>Verto's Summary Judgment Motion No. 2</u>

Defendant Verto next claims that any defect in the ropes was merely a condition of the accident rather than the proximate cause.  Under Illinois law this concept contains two distinct requirements: cause-in-fact and legal cause.  <u>First Springfield Bank & Trust v. Galman</u>, 720 N.E.2d 1068, 1072 (Ill. 1999).  Whether proximate cause exists is generally a question for the jury.  <u>Palay v. United States</u>, 349 F.3d 418, 432-33 (7th Cir. 2003).  Defendant does not dispute that the alleged defect was a "but for" cause of plaintiff's injuries, but instead argues that

plaintiff fails to present any facts indicating that his injuries were reasonably foreseeable in light of the circumstances. *See* Thompson v. County of Cook, 609 N.E.2d 290, 294 (Ill. 1993) ("Illinois courts have long distinguished ... between condition and causation"). Verto claims that plaintiff and Montgomery made a choice to clean the ropes while they were moving and, in so doing, broke the chain of causation.

In First Springfield, employees of the defendant illegally parked a truck approximately 40 feet from an intersection. 720 N.E.2d at 1070. Instead of proceeding to the crosswalk at the intersection, a woman attempted to cross the street in front of the truck. *Id.* While crossing, however, she was struck by a car and killed. *Id.* The Illinois Supreme Court held that, though the illegal parking of the truck was a cause-in-fact of the woman's death, it was not a proximate cause. *Id.* at 1072. The court determined that the injuries were not a foreseeable result of parking the car in that spot because the woman's decision to jaywalk broke the causal chain. *Id.*

While certain choices by a plaintiff may defeat causation, many decisions do not have this effect. *See* McShane v. Chicago Inv. Corp, 601 N.E.2d 1238, 1249 (Ill. App. 1st Dist. 1992). In McShane, the plaintiff filed a wrongful death action against the sublessee of a building after a firefighter was killed while responding to an alarm. *Id.* at 1241. The defendants claimed that the proximate cause of the injury was not the fire, but rather the firefighter's decision to use an elevator, in violation of public policy. *Id.* at 1249. The court found that, although this decision was a contributing factor, the fire was still a proximate cause of the plaintiff's injury, because the death of the fireman was a foreseeable consequence of the fire. *Id.*

This case is closer to McShane than First Springfield. While the decision to clean the

ropes while moving was certainly a "but for" cause of plaintiff's injuries, it was a foreseeable result of the alleged defect in the ropes.  Like in <u>McShane</u>, plaintiff's employers made a decision as to how to react to a problem allegedly caused by the defendants.  This decision and the resulting injuries were foreseeable results of defendant placing a defective product in the stream of commerce.  To hold otherwise would effectively shield manufacturers from liability in cases where the user of a defective product made some decision as to how to use the product.

<u>Verto's Summary Judgment Motions Nos. 3, 4, 5 & 6</u>

Motions 3, 4, 5 and 6 are all related.  Verto argues that plaintiff fails to produce any evidence of a specific design or manufacturing defect in the ropes and that he fails to produce evidence that the ropes, even if defective, could have caused plaintiff's specific injuries. Finally, defendant claims that, in the absence of any such evidence, plaintiff cannot prevail on his claims for breach of implied warranties.

A plaintiff may establish a *prima facie* case for product liability by establishing facts showing that, despite no abnormal use and no reasonable secondary cause, the product failed to perform as could be expected.  <u>Tweedy v. Wright Ford Sales, Inc.</u>, 357 N.E.2d 449, 452 (Ill. 1976).  This method allows a plaintiff to prove a non-specific defect in the product through circumstantial evidence.  <u>Weedon v. Pfizer, Inc.</u>, 773 N.E.2d 720, 724 (Ill. App. 1st Dist. 2002). Because plaintiff does not attempt to introduce evidence of a specific defect, we grant motions 3 and 4.

Applying the standard set forth in <u>Tweedy</u>, plaintiff produces evidence sufficient to withstand summary judgment motion no. 5.  He concedes that he does not attempt to prove a specific defect in the design or manufacturing of the ropes, but instead argues that the ropes

must have malfunctioned and therefore caused his injuries.[1]  Contrary to defendant's assertions, plaintiff does not need to prove a specific causal link at this time in order to prevail under Tweedy.  It is enough that the facts show no reasonable secondary cause.  Obviously, defendant may prevail at trial if it is able to prove that some factor, other than a product defect, led to the malfunction and to plaintiff's injuries.  At this stage, however, it makes no attempt to do so.

## AFD's Summary Judgment Motion

Defendant AFD also seeks summary judgment as to the negligence claim, arguing that plaintiff fails to prove facts establishing that AFD owed a duty to the plaintiff, that it breached that duty, or that any breach of duty was a proximate cause of plaintiff's injuries.

When a party voluntarily undertakes to act, it becomes subject to liability in negligence if it fails to exercise due care in the performance of that undertaking.  Wakulich v. Mraz, 785 N.E.2d 843, 854 (Ill. 2003).  On April 14, 1993, an AFD employee participated in the inspection of the elevator ropes at the Sheraton.  While there are still questions of fact as to the extent of the role assumed by AFD at that time, it may have assumed a duty to perform the inspection and follow up on that inspection with due care.  Plaintiff presents facts that may establish defendant failed to do so when it failed to recommend an extraordinary measure and failed to accept Montgomery's suggestion that the ropes be removed.

In Nelson v. Union Wire Rope Corp., 199 N.E.2d 769, 778-80 (Ill. 1964)[2] the Illinois

---

[1]This also moots defendants' second motion *in limine* as plaintiff will not be introducing such evidence.

[2]While Nelson was governed by Florida law, it accurately stated Illinois law in this area and has been subsequently approved of by the Illinois Supreme Court.  Wakulich, 785 N.E.2d at 854-55.

Supreme Court found that an insurance company that had voluntarily inspected an elevator system owed a duty of care to workmen who were injured when that elevator failed. This duty extends to all parties who could reasonably be injured by a failure to perform the inspection with care. *Id.* at 779. When Verto agreed to participate in the inspection, it impliedly agreed to use due care. It was foreseeable that a failure to do so would lead to the injury of a person working on the elevator system. Plaintiff presents facts showing that defendant breached this duty by failing to recognize the seriousness of the problem with the ropes and take corresponding action. As stated above, Montgomery's decision to clean the ropes while moving may have added to the risk, but it did not break the chain of causation dating back to the alleged negligence by AFD.

Defendant's attempts to distinguish this case from <u>Nelson</u> are unconvincing. While it is true that the undertaking by AFD was not actually gratuitous but was at the request of Montgomery, this actually strengthens plaintiff's claim. When agreeing to perform the inspection (if it is so agreed), defendant should have known that Montgomery expected it to do so using care. Next, although it is true that the inspection in this case was not a planned periodic inspection, as was the case in <u>Nelson,</u> this distinction does not make a difference here. Again, if it agreed to perform the inspection, it assumed a duty. Plaintiff's claims rest on the idea that his injuries, occurring only a few weeks later, occurred because AFD breached that duty when it negligently performed the inspection.

<u>Verto's motions in limine</u>

Defendant Verto seeks to limit the testimony of plaintiff's expert witness, Richard Bertz. Specifically, defendant claims that Bertz should not be able to testify that the gunk

could only be removed while the ropes were moving. An expert opinion is generally admissible if it is based on sufficient facts or data, is the product of reliable principles and methods, and the witness reliably applied the methods and principles to the relevant facts. Cummins v. Lyle Industries, 93 F.3d 362, 367 (7th Cir. 1996).

The testimony covered by defendant's motion *in limine* is exactly the type contemplated by Federal Rule of Evidence 702 and Cummins. Bertz is an expert in elevator repair and has substantial knowledge as to the various methods of repair and cleaning. In applying this knowledge to the gunk, his opinion is that other methods of cleaning would have been impractical. He based this conclusion on information he received about the gunk from those who actually saw it. While defendants may, and undoubtedly will, cross examine Bertz on his lack of actual first-hand contact with the gunk, this lack of contact does not disqualify his testimony because it is based on facts relevant to the case.

Plaintiff's motion to strike

Defendant Verto's expert witness, George Gibson, is expected to testify that the excessive and unusual gunk was not caused by a defect in the ropes, but was instead the result of slippage caused by the structure of the elevator system. If the "required traction" exceeds the "available traction" of a particular elevator system, the elevator is likely to slip. This may cause metal fines to form, leading to the formation of gunk. Plaintiff seeks to strike parts of Gibson's report and bar him from testifying about conclusions he made that were based on the assumption that the rope-to-groove angle of contact in the Sheraton's elevators was 22.5° or $\pi/8$ radians.

The available traction of an elevator system is a function of the apparent coefficient of

friction and the angle of contact between the rope and the sheave.[3] The angle of contact

between the rope and sheave at the Sheraton is 315° or 5.5 radians. The only variable is the

apparent coefficient of friction. This value is itself a function of the actual coefficient of

friction between a specific rope and groove surface and the actual angle of contact of that rope

and groove.[4] If the actual angle of contact or the actual coefficient of friction reduces, the

apparent coefficient of friction and, therefore, the available traction also reduces. In other

words, a calculation using a lower value for the angle of contact between the rope and sheave

groove is more likely to lead to an inference of possible slippage by the elevator system.

Plaintiff argues that Gibson steadily reduced the values he used for the actual

coefficient of friction and the angle of contact until he arrived at an available traction that was

less than the required traction so that he could claim that slippage was likely. He claims that

the final value used by Gibson (22.5° or $\pi/8$ radians) is not supported by the facts.

Gibson's conclusions do not rest on his mathematical model of the elevator alone. He

also relied on an investigation by Montgomery of 28 of its elevators that allegedly showed

traction problems and the fact that after this investigation Montgomery made changes to its

groove design in similar elevators.

As we understand it, Gibson's use of $\pi/8$ radians is for a very limited purpose. He does

not claim that the value was $\pi/8$ radians. He does claim that the total evidence establishes that

there was slippage, and plaintiff does not dispute that he may so testify. He further claims that

---

[3]The applicable formula is $\alpha = e^{Fa \cdot \Theta}$, where $\alpha$ is the available traction, e is the base of natural logarithms (a constant 2.71828), Fa is the apparent coefficient of friction and $\Theta$ is the angle of contact between the rope and the sheave.

[4]$Fa = 4\mu [(\sin \gamma/2) / (\gamma + \sin \gamma)]$, where $\mu$ is the actual coefficient of friction and $\gamma$ is the actual angle of contact.

the evidence of values for the relevant elevator at the time of the accident are inherently unreliable, and the exact values are now impossible to ascertain. It could possibly be that the values were about $\pi/8$; that cannot be ruled out. If that were so, it would explain the slippage. If that were not so, it would not. But slippage there was.

Framed that way, we think Gibson can use his $\pi/8$ assumption – and in cross examination plaintiff can point out that other and equally plausible assumptions would result in mathematical models that do not support any explanation of slippage.

Other motions

Defendants Verto and AFD also filed a series of motions seeking to join in each other's motions. We grant AFD's motion to join Verto's summary judgment motions 3 and 4, and deny the remaining motions as moot.

## CONCLUSION

For the foregoing reasons, Verto's motions 3 and 4 for summary judgment, and AFD's motion to join those motions are granted. Verto's remaining motions, AFD's motion for summary judgment, Sikora's motion to strike, and the remaining motions to join are denied.

James B. Moran
JAMES B. MORAN
Senior Judge, U. S. District Court

April 16, 2004.